```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF IOWA
                      CENTRAL DIVISION
```

| | |
|---|---|
| BOOKS ARE FUN, LTD.,       ) | |
|                            ) | No. 4:05-cv-644-JEG-CFB |
|       Plaintiff,           ) | |
|                            ) | |
| vs.                        ) | RULING ON PLAINTIFF'S |
|                            ) | MOTION FOR RE-DESIGNATION |
| STEPHEN ROSEBROUGH, STEVEN ) | OF CONFIDENTIAL DOCUMENT |
| CRADDOCK, MARK RADER, VIRGIL ) | |
| STRECK, READER'S CHOICE BOOKS,) | |
| INC., and RFA, INC. d/b/a  ) | |
| "IMAGINE NATION BOOKS, LTD.," ) | |
|                            ) | |
|       Defendants.          ) | |

The above resisted motion [12] is before the Court following hearing. This action involves what appears to be the lucrative book display marketing business. Companies in the business erect book displays in places like schools, hospitals, and nursing homes. They typically sell through a network of independent contractor sales representatives.

Plaintiff Books Are Fun ("BAF") was founded by Earl Kaplan. He sold it to Reader's Digest in September 1999 under a five-year noncompete agreement. The agreement expired in September 2004 and in December of that year Kaplan founded defendant Imagine Nation. BAF and Imagine Nation are now aggressively competing against each other to recruit the sales representatives on which they depend. According to Imagine Nation, it has been successful in recruiting BAF sales representatives. This action arises out of those efforts.

During the noncompete period, Kaplan's former stepson and former BAF employee, defendant Stephen Rosebrough, decided he wanted to get into the book display marketing business. He solicited Kaplan to join him in the venture. Rosebrough and Kaplan discussed terms embodied in a document which is the subject of the motion (the "disputed document"). Imagine Nation and Kaplan, who is not a party in this action, contend that though Kaplan signed the document, he never informed Rosebrough he had done so or delivered a signed copy to him because after discussing the matter with his lawyer and confirming the noncompete agreement did not expire for another year he decided not to become involved.

Rosebrough went ahead and formed Reader's Choice. After Kaplan's noncompete agreement expired, he loaned money to Reader's Choice and agreed to serve as chairman of the board, though according to Imagine Nation and Kaplan he never really assumed that position and soon withdrew from involvement in Reader's Choice. Reader's Choice did not succeed and went out of business in early 2005.

Apparently Kaplan's involvement, or lack of involvement, in Reader's Choice has become a part of the battle between BAF and Imagine Nation for the hearts and minds of experienced sales representatives. Imagine Nation contends BAF "has used information obtained in discovery in this action to suggest falsely to sales representatives contemplating a move to Imagine Nation that Kaplan was the moving force behind Reader's Choice," raising the spectre that if they jump ship from BAF to Imagine Nation they risk ending

2

up in another failed Kaplan venture like Reader's Choice. (Resistance at 6-7). BAF on the other hand views the disputed document as further proof of Kaplan's connection to Reader's Choice and candidly admits that it wants the document in the public domain to counter public statements made by Kaplan in the competitive tug-of-war distancing himself from any significant involvement in Reader's Choice.

While in state court before removal the parties agreed to a protective order which restricted the disclosure of two categories of protected documents denominated "Attorney's Eyes Only" and "Confidential." They agreed on a definition for "Confidential Information" as follows:

> . . . [t]rade secrets; sensitive business or financial information; confidential research, development or commercial information; confidential or private personal information; or other information which, if disclosed, could cause unwarranted damage to the person or entity designating the document as confidential and/or any unwarranted damage to third parties doing business with the parties to this litigation.

Protective Order ¶ 2. The parties further agreed that a party could apply to the Court for a ruling that a document stamped "Confidential" or "Attorney's Eyes Only" was not entitled to such status. Pursuant to subpoena, on December 19, 2005 Kaplan produced (belatedly complains BAF) the disputed document which Imagine Nation stamped "Attorney's Eyes Only." BAF promptly filed the present motion requesting that the document be declassified from either Attorney's Eyes Only or Confidential status. Following conference with the Court on December 23, 2005, the Court, in an

3

order of the same date, set hearing but also indicated that the matters reflected in the disputed document could be referred to in then-contemplated New York litigation concerning Kaplan's compliance with the noncompete agreement without violating the protective order. That litigation has since been commenced. On January 4, 2006 Imagine Nation and Kaplan filed their resistance to the motion, which by separate filing was joined in by all other defendants. Imagine Nation and Kaplan do not resist redesignation of the document as "Confidential," but argue that protected status should be maintained because the document contains information that "could cause unwarranted damage" to Imagine Nation and Kaplan "because BAF will attempt to use it to portray Kaplan and Imagine Nation in a false light in the hopes of stemming the flow of independent contractors and employees to Imagine Nation, and to discourage vendors from selling to Imagine Nation." (Resistance at 9).

Imagine Nation and Kaplan have the burden to establish that the document in question contains confidential information as defined in the Protective Order. See 6 Moore's Manual § 26.104[2] at 26-255 (2005) (the party opposing a challenge to the confidentiality of a particular document under the terms of a protective order has "the burden of justifying the order with respect to the challenged document[]"); see also In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991). The phrase "could cause unwarranted damage" must be construed to require a showing of potential serious harm beyond speculation, otherwise the

4

Protective Order sweeps much too broadly to comport with the "good cause" requirement of Fed. R. Civ. P. 26(c), which governs post-removal.

So viewed, the Court is not convinced the disputed document contains confidential information. First, the document concerns a business relationship which either never came into being, or if it did, relates to a now-defunct business concern. The content of the document is not by its nature confidential at this point. Second, the problem with the "false light" argument is that the Court is not in a position to determine what the true facts are about Mr. Kaplan's involvement in Reader's Choice. From BAF's standpoint, restricting disclosure of the disputed document assists Kaplan and Imagine Nation in portraying Kaplan's relationship with Reader's Choice in a false light. Mr. Kaplan's affidavit, that of Mr. Rosebrough and Kaplan's deposition (all attached to the Resistance) support the contention the relationship reflected in the disputed document was stillborn and Kaplan's post-noncompete role in Reader's Choice was minimal, but the disputed document is arguable evidence to the contrary. That any effect of disclosure on Imagine Nation's competitive position would be "unwarranted" is thus not clearly shown.

Third and most importantly, the likelihood of damage to Imagine Nation and Kaplan from public disclosure of the disputed document is speculative. The potential damage relates to the competition for sales representatives. Clearly, documents which if disclosed would place a party at a competitive disadvantage are

5

entitled to protection as confidential, but the Court is not convinced that is likely to result from disclosure of the disputed document. As noted, the feared damage from disclosure is that it will be used to suggest to sales representatives that if they follow Kaplan, they risk being tied to a failed venture like Reader's Choice. By its own account, Imagine Nation has been "extremely successful" in recruiting sales representatives from BAF. (Resistance, Attch. A, Aff. of E. Kaplan). The controversy over Kaplan's role or lack thereof in Reader's Choice is nothing new. Apparently BAF has been touting Kaplan's involvement in Reader's Choice since at least May of 2005 when in a letter to BAF sales representatives its president questioned Kaplan's statements about his limited involvement, asserting Kaplan had "invested a substantial amount in Reader's Choice, was negotiating at the book fair in Germany on their behalf, and, under oath, identified himself as chairman of Reader's Choice." (Resistance, Attch. A-2). The disputed document supports BAF's characterization of Kaplan's role, but Kaplan has an answer he has forcefully put forward in these proceedings and undoubtedly would in the discourse between BAF and Imagine Nation as they compete for sales representatives. Despite the efforts to tie Kaplan to Reader's Choice, Imagine Nation has been successful in competing with BAF and Kaplan has a solid track record to point to as the founder of BAF. In light of this history, that disclosure of this single document at this point would significantly impact Imagine Nation's competitive position seems remote.

As Imagine Nation and Kaplan have not established the disputed document contains confidential information, the document embodying it, Document No. EK0053, is not entitled to protection under the protective order as "Confidential" or "Attorney's Eyes Only" and may be treated by the parties accordingly.

Motion [12] **granted**.

IT IS SO ORDERED.

Dated this 19th day of January, 2006.

ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE